## MANUEL F. COSTA *v.* MARY PINHERO COSTA.

### No. 942.

APPEAL FROM CIRCUIT JUDGE, SECOND CIRCUIT.

HON. W. S. EDINGS, JUDGE.

SUBMITTED JULY 3, 1916.                    DECIDED JULY 18, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

DIVORCE—*failure to provide.*
> A wife is not entitled to a divorce on the ground of failure to provide if she deserts her husband or lives apart from him without reasonable cause.

SAME—*desertion—offer to return.*
> In order to bar a suit for divorce on the ground of desertion an offer by the deserting spouse to return must be made before the period of desertion is complete and the other party has acquired a right to a divorce.

OPINION OF THE COURT BY WATSON, J.

On the 29th day of November, 1915, Manuel F. Costa filed his libel praying for an absolute divorce from his wife, Mary Pinhero Costa, on the ground that she had utterly and wilfully deserted him ever since the 18th day of February, 1914. Libelee filed an answer and cross-libel. In her answer she denied all the allegations of the libellant's libel with the exception of the allegations relative to the marriage and to the issue of said marriage. In her cross-libel she prayed for an absolute divorce from her husband on the ground of his failure and refusal to provide her with suitable maintenance, though of sufficient ability so to do, for a period of more than sixty days prior to the filing of the libel. She also prayed that the care, custody and control of the three children, surviving issue of said marriage, be awarded to her and that her husband be required to

make suitable provision for the support of said children. Libellant's libel was afterwards amended so as to include a prayer for the custody of the three children. An answer was also filed by libellant denying the material allegations of the libelee's cross-libel, and thereafter the libel and cross-libel were heard together in open court upon evidence adduced by each of the parties. The parties having rested, the cause was submitted without argument and thereafter the court rendered a decree in favor of libellant dissolving the bonds of matrimony theretofore existing between said Manuel F. Costa and Mary Pinhero Costa on the ground of the desertion of the libellee for a period of more than one year, and awarding to libellee the custody of the children. From this decree libellee has appealed to this court specifying as error that the court erred in finding libellee guilty of wilful and utter desertion and in granting a divorce to libellant on that ground, and that the court erred in denying the libellee a divorce from the libellant on the ground of non-support, as prayed for in her cross-libel.

These alleged errors will be considered together, as it is of course well settled that a wife is not entitled to a divorce on the ground of failure to provide if she deserts her husband or lives apart from him without reasonable cause. The evidence in this case shows that the parties were married in 1907 and lived together continuously thereafter until February, 1914; that there were five children born to them, issue of their said marriage, of whom three were living at the time of the institution of the divorce proceedings; that the parties last lived together as husband and wife at Kahului, Maui; that on February 16, 1914, the husband, having lost his job at Kahului, sent his wife and children, together with the household furniture, in a wagon from Kahului to Makawao, Maui. Libellant testified that he had rented a house at Makawao for his family to live

in, and, on the departure of libellee from Kahului, told her to go with the children and furniture to the house he had so rented; that upon her departure he gave her $80 with which to provide herself and children with provisions and other necessaries upon their arrival at their new home; that there was a store a short distance from the house he had rented. Libellee, on the other hand, testified that her husband told her to go to the home of her parents who lived at Makawao, and that she went there and took the children and household furniture; she denied that her husband gave her any money when she left Kahului, and testified that she was absolutely without money. In support of his testimony that he had rented a house at Makawao libellant introduced, and there was received in evidence, a receipt showing that libellant had rented and paid rent for a house from February 18, to March 18, 1914. Other than this there was no evidence to corroborate the testimony of either party as to where libellant expected his wife and children to go when they left Kahului for Makawao. There were no findings of fact made by the lower court, but on this point, as to where the libellant told his wife to go and whether or not he supplied her with money at that time, the evidence is conflicting and we must assume that the circuit judge believed the testimony of the libellant and disbelieved the testimony of the libellee. Be that as it may, it appears from the undisputed evidence that within a day or two after the wife left Kahului (the libellant testified, on the day following her departure), libellant went to Makawao and found his wife and children, with the furniture, at the home of the wife's parents. He testified that he then asked her to go and live with him and she refused. In this he is corroborated by the witness David Morton, deputy sheriff of the Makawao district, who was called in when some dispute arose between the parties as to the husband's taking the furniture. Morton testified that he urged

the wife to go back to Manuel and she said she did not feel like going with him any more; that he was never steady in one place; that this was the only reason that she gave. Morton further testified that libellant had a wagon and that he took the furniture away with him. Libellant testified that he went to see his wife the next morning and again asked her to live with him and she again refused; that she would not live with him in the house he had rented or anywhere; that she said she would go nowhere from her father's house; that he sold the furniture the day after he took it away, and after staying in Makawao for a week or ten days he went to Honolulu where he had since resided, living in the home of his married brother; that his brother and sister-in-law had no children of their own and that his sister-in-law was willing to help him take care of the children in case their custody was awarded to him; that after going to Honolulu he wrote his wife several letters asking her to live with him but received no reply to any of his letters; that he sent no money in any of the letters to pay the passage of his wife and children from Maui to Honolulu. There was testimony from several other witnesses, mutual friends of the parties, who were trying to get the wife to return to her husband, that libellee at various times said she would not live with her husband. A. R. Souza, Jr., testified that in July, 1915, at the request of the husband, he saw Mrs. Costa and tried to get her to go back to her husband but she said, "If I ever do that my father would not accept me any more in his house;" that he saw her a week later and she told him she had met her husband at Mrs. Abreu's house and would not go back with him; that some time in September, 1915, libellee told him she would not go back to her husband because if she did her father would not think of her again. A. F. Tavares testified to the same effect, that shortly after the separation he went to the house of libellant's parents to see her and

asked her if she would not go back to her husband; that she studied for a long time and finally she refused and went right into the house again. We think the evidence warranted the circuit judge in holding that libellee left her husband without just cause and against his will. The desertion was therefore wilful and the only question is whether it was justified by the fact that at the time libellee went to the home of her parents she was pregnant. This fact was testified to by libellee herself and also her father, it appearing that some three months after going to her parents' home she gave birth to a child, which died a few weeks later. It appears from the evidence that libellant did not write his wife for several months after going to Honolulu, and that the father of libellee, who is fairly well-to-do, has taken care of libellee and the children since they came to his house and that he paid all the expenses incident to the birth of the child.

We gather from a reading of the entire transcript that the relations between libellant and his wife's parents are unfriendly and libellee's preference seems to be to remain with her parents rather than live with her husband, of whom she complains that he is not steady—that he does not remain long in one place. Libellee never gave as a reason for leaving her husband the fact of her pregnancy, nor does it appear that she has at any time, by letter or otherwise, requested libellant to receive her back or contribute to the support of herself and children. She seems to have been perfectly satisfied with the situation in which she found herself after deserting her husband and to have preferred to remain with her parents, who, it appears, are taking care of her and the children. Libellee at the trial, when asked if she was willing to go to her husband, if he then had a home for her, testified: "I was willing." "Q. Are you willing to go to him now? A. Well, he said he wanted a divorce. The Court: You answer the question.

A. I think we might as well have a divorce same as he likes." She has made no effort to effect a reconciliation, and in this attitude she seems to have the support of her parents. No just cause having been made to appear for her leaving her husband in the first instance, even though it be true that in 1915, some three or four months before Christmas, as testified to by her and Mrs. Abreu, libellee talked with her husband and offered to live with him if he would provide a home for her in Honolulu, we are of the opinion that this offer to return, if made, after her previous repeated refusals to live with her husband, was made too late, her desertion at that time having continued for more than one year and her husband having acquired a right to a divorce. 9 Am. & Eng. Ency. Law (2d ed.) 775; 14 Cyc. 620; 1 Bishop M. & D. (6th ed.) §810.

While we may think, as men, that the libellant's treatment of libellee, subsequent to her leaving him, was harsh and unmanly, in that he did not go to see her or write her at the time of her confinement, and while it unquestionably appears that his conduct towards her does not evince such an affection for her as a husband should have for his wife, we are of the opinion that libellee left her husband without just cause and that upon her remaining away from him and refusing to live with him for more than one year libellant became entitled to a divorce upon the ground of the wife's desertion.

The decree appealed from is affirmed.

*C. H. McBride* for libellant.

*E. Vincent* for libellee.