# CHARLESTON.

### HALL *v.* HALL.

Submitted June 7, 1910.   Decided April 18, 1911.

1.   DIVORCE—*Right to Relief—Inequitable Conduct of Plaintiff.*
       The rule of courts of equity, denying relief to a party because of his own inequitable conduct in and about the subject matter of his cause of action, applies in suits for divorce. (p. 179).

2.   SAME—*Limited Divorce—Desertion—Conduct Precluding Relief.*
       Under this rule, conduct of a plaintiff in a suit for a limited

divorce on the ground of desertion, not sufficient to justify the desertion, may nevertheless be sufficient to preclude relief.  (p. 179).

3.  SAME—*Desertion—Right of Husband to Determine Domicile.*
Though a husband has the legal right to determine the place of abode of the family, and the wife must submit to his decision, this power must· be exercised in a reasonable and just manner.  It cannot be exercised arbitrarily, nor used as a means of procuring dissolution of the marital relation.  (p. 178).

Appeal from Circuit Court, Monongalia County.

Bill by William H. Hall against Millie Hall.  Decree of dismissal, and plaintiff appeals.

*Affirmed.*

*L. V. Keck* and *Cox & Baker,* for appellant.

*Lazzelle & Stewart,* for appellee.

POFFENBARGER, JUDGE:

His bill for a divorce from bed and board having been dismissed and relief denied him, the plaintiff obtained this appeal.

On its face, the bill is sufficient as one for a limited divorce on the ground of abandonment and desertion.  It charges that on the 9th day of September, 1908, the defendant, without any just cause and in the absence of the plaintiff, deserted and abandoned him, without his knowledge or consent, and took up her residence with her father where she has since remained.  It sets up all jurisdictional facts.  These are admitted by the answer, but the charge of desertion is emphatically denied and resisted.  Admitting her absence from the plaintiff's place of abode and the date of her leaving, the defendant charges misconduct on the part of the plaintiff as reason or excuse for her absence, and relies upon these facts as a bar to the relief asked.

Married on the 18th day of March, 1908, a female child was born to the parties, July 18, 1908.  On their marriage, they took up their residence in a small house owned by the plaintiff's father and in which his widowed aunt had resided for some years.  There seems to have been no serious trouble between the plaintiff and defendant, but the latter complains of the conduct of the aunt, with whom she had a quarrel on the day on which she left.  She charges other previous difficulties with her and

neglect and unkindness on the part of the husband. On or about the day of her leaving, she told her husband she could not get along with the aunt and requested him to obtain another place of residence. To this he replied that he could not rent two or three houses. Then a conversation occurred between him and the mother-in-law on the same subject. The latter charged him with having mistreated her daughter in that he had failed to go out with her or give her money and told him the wife intended to leave and take the child. To this he replied that, if the mother-in-law intended to run the business she might do so, but he proposed to run his own business. He says that, before leaving the house, he declared his willingness to take care of the wife as long as she should stay with him. In her testimony, the wife says she was unable to live with her aunt and that when the latter ordered her out she does not see why she had not the right to go. The husband has never asked her to return or made any effort to induce her to do so. Nor has he visited her or communicated with her, except as he casually met her on one or two occasions. After she left, he seems not to have made any inquiry about her or to have cared whether she returned or not.

Mere absence of one spouse from the other, though voluntary, does not constitute desertion. Not only must cohabitation cease, but there must be intent in the mind of the offending party to desert or abandon the other, and these two ingredients must combine and coexist. *Alkire* v. *Alkire,* 33 W. Va. 517; *Martin* v. *Martin,* 33 W. Va. 695. Though the statute allows a divorce *a mensa et thoro* for abandonment or desertion, in general terms, and does not in express words require wilfulness, it must be assumed that the legislators, in drafting and enacting it, intended such abandonment and desertion as is generally recognized and treated as sufficient ground for a limited divorce. So this Court has construed the statute.

Nothing else considered, we might say the declared intention of the defendant to leave, her actual departure and failure to return, make a case for divorce under this view of the statute. Both her declarations and acts are indicative of intent. There was a cessation of cohabitation, coupled with declarations of intent. The inference or conclusion to which these facts tend

is opposed, however, by her willingness, averred in her answer and protested in her testimony, to renew cohabitation, provided the plaintiff will separate himself from the company of his aunt. At the time, she requested him to obtain another house and still says she is willing to cohabit with him, if he will do so. Insufficiency of these protestations is charged on the ground that they are conditional. Though conditional, they, taken in connection with other facts and circumstances, may be sufficient to preclude the relief asked for by the plaintiff and sustain the decree appealed from. Whether they are or not depends upon the consideration and application of principles now to be stated.

Alleged fatality of this condition is founded upon the supposed absolute right of the husband to determine the place of domicile. This right is stated by Schouler, in his work on Husband and Wife, at section 59, as follows: "And the husband, as *dignior persona,* has the right to fix it (the domicile) where he pleases. The wife's domicile merges in that of her husband." But in the same section, he qualifies the proposition as follows: "In the genuine sense the domicile of the husband becomes that of the wife, and wherever he goes she is bound to go likewise; not, however, unless his intent be *bona fide* and without fraud upon her person or property rights." At section 61 he says: "A husband would not be permitted to remove his wife to some remote and undesirable place for the sake of punishing or tormenting her, or so as to compel her to stay alone where he did not mean to reside himself; for this would not fix the matrimonial domicile with honest intent." This principle was applied in *Powell* v. *Powell,* 29 Vt. 148, in a case very similar in one respect to this. The wife had refused to live with her husband in a particular locality in close proximity to his relatives. He applied for divorce on the ground of desertion which the trial court refused. In affirming this decree, the supreme court, through Redfield, C. J., said: "Now, while we recognize fully the right of the husband to direct the affairs of his own house, and to determine the place of the abode of the family, and that it is in general the duty of the wife to submit to such determinations, it is still not an entirely arbitrary power which the husband exercises in these matters. He must exercise reason and discretion in regard to them. * * * Any man who has proper tenderness and affection for his wife would

certainly not require her to reside near his relatives, if her peace of mind were thereby seriously disturbed." Other cases declaring and applying the same doctrine are *Gleason* v. *Gleason,* 4 Wis. 64; *Bishop* v. *Bishop,* 30 Pa. St. 412; and *Boyce* v. *Boyce,* 23 N. J. Eq. 337.

The conduct of the husband in fixing the place and conditions of the matrimonial residence may subject him to the application of another principle of almost universal observance. In seeking a divorce, he cannot obtain the benefit of his own wrong. Courts are ordained for the enforcement and vindication of the law and legal rights. They never aid anybody in efforts to violate law nor give him the benefit or fruit of his own violation thereof. No court of law or equity will enforce or give any right upon an illegal contract. Following the same principle, a court will not allow the use of its powers and process to obtain a benefit founded directly upon a breach of law by the applicant therefor. Courts of equity go still further and refuse relief, even in cases of equitable right, if the applicant has been guilty of fraud or misconduct in or about the matter in respect to which he seeks relief. *Peters* v. *Case,* 62 W. Va. 33; Hogg's Eq. Prin., section 324, p. 450. To obtain relief in a court of equity, the plaintiff must come with clean hands, and this maxim applies in divorce cases as well as in others of equitable cognizance. This is the principle underlying the defenses of connivance, collusion and recrimination, everywhere recognized and permitted. Bishop Mar. Div. & Sep. sections 201-409, inclusive; *Wass* v. *Wass,* 41 W. Va. 126; *Pierce* v. *Pierce,* 3 Pick. 299; *Myers* v. *Myers,* 41 Barb. 114; *Dauforth* v. *Dauforth,* 105 Ill. 603.

Conduct sufficient to bar relief need not be such as would give the defendant cause for a divorce. Remedy and divorce are different things. Conduct sometimes denies remedy for apparent rights. Inequitable conduct on the part of the plaintiff, though it does not amount to cause for a divorce, suffices to defeat his application for relief. A different conclusion would be violative of the fundamental principle just stated. Adherence to that principle is necessary to the protection of the interest the state has in every suit for divorce. Marriage was instituted for the good of society. Once incurred, the marital relation must be continued, if continuance thereof is reasonably practicable, for the same reason. Its solemnity and importance as a factor in

civilization forbid severance of the relation for slight cause. To allow both parties to dissolve the relation at will, or one of them to effect dissolution by trickery or fraud, would tend directly to defeat all the high and necessary purposes for which marriage was ordained. These are some of the obvious reasons for the application of the equitable maxim and legal principle in numerous cases of denial of relief. *Bacon .v. Bacon,* 68 W. Va. 747; *Wass* v. *Wass* cited; *Cooper* v. *Cooper,* 17 Mich. 205; *McGowen* v. *McGowen,* 52 Tex. 657; *Simpson* v. *Simpson,* 31 Mo. 24; *Ingersol* v. *Ingersol,* 49 Pa. St. 249; *Goldbeck* v. *Goldbeck,* 18 N. J. Eq. 42; *Lynch* v. *Lynch,* 33 Md. 328; *Gray* v. *Gray,* 15 Ala. 779; *Crow* v. *Crow,* 23 Ala. 583.

Viewing the facts disclosed by the record in the light of these principles, we are unable to say the trial court erred in refusing a decree of divorce. The plaintiff married a woman with whom he had previously had illicit intercourse. He knew her character and history when he married her. His entire conduct indicates a desire for separation and relief from the marriage relation, and likely because of her character. As to this, he made his election when he made her his life companion. He took her to a house occupied by an aged relative where she says her relations were unpleasant. He gave her no public recognition as his wife otherwise than by living and cohabiting with her at that place. He refused to go out with her in public or to accompany her even upon visits to her own parents. When she expressed her dissatisfaction with her surroundings and treatment, he made not the slightest effort to comply with her wishes. His ultimatum was that he would support and keep her, if she would accede to his arbitrary will and determination as to the place in which, and the conditions under which, they should live together. Knowing her dissatisfaction with this and her intention, not to desert him absolutely, but to withdraw from that place, and her willingness to live with him under other conditions, he did not even request her to stay, nor ask her to return, nor in any way indicate a desire to renew cohabitation. There was no serious obstacle to his complying with the wish and desire she expressed. The house did not belong to him and he had nothing invested in it. According to his own contention and claim, he had simply taken the place of his aunt as tenant of the house and paid rent for it. How much rent or for what

period of time, he does not disclose. This conduct is not consistent with good faith and an honest effort to maintain the solemn relation he had assumed. In *Martin* v. *Martin,* Judge ENGLISH well expressed a proposition, in full and complete harmony with the principles we are applying, in the following terms: "In assuming the marriage relation, it is understood that the contracting parties do so fully aware of the frailties and imperfections of human nature, and conscious of the fact that mutual forbearance must be practiced to enable them to pursue pleasantly the journey of life as companions; each party undertaking to overlook the moral wrongs and infirmities of the other. The best interests of society, decency, and morality combine in demanding that the obligations taken upon themselves, by the parties who enter into the marriage contract, should not be abandoned and disregarded upon the mere whim or caprice of either party or upon slight cause, real or imaginary."

Seeing no error in the decree, we affirm it.

*Affirmed.*