# CHARLESTON.

## FISHER v. FISHER.

Submitted October 2, 1917.   Decided October 16, 1917.

1. DIVORCE—*Grounds*—"*Desertion*"—*Intent.*

   Though, to constitute desertion or abandonment authorizing a decree. of divorce from bed and board, actual withdrawal of one spouse from association and life with the other must be accompanied by intent on the part of the former to sever cohabitation, his mere protestation of lack of such intent is not conclusive thereof, and is overthrown by his persistent and inexcusable refusal, for an unreasonable period, to resume cohabitation, upon a positive demand for his resumption thereof.   (p. 109).

2. SAME.

   A husband's retirement from cohabitation with his wife in property owned by her and residence on property of his own with his children by a former wife, against her protest, in violation of an antenuptial agreement to reside in her property, and without a demand that she reside with him at his former home or in any other place provided for her, amounts ·to a desertion justifying a decree of divorce from bed and board in her favor.   (p.· 109).

3. SAME—*Desertion*—*Temporary Absence from Home.*

   Though a husband may rightfully absent himself from his home temporarily, in the conduct of his business, that right does not protect him from the consequences of conduct amounting to desertion.   (p. 109).

Appeal from Circuit Court, Jackson County.

Suit for divorce by Mary C. Fisher against J. B. Fisher From a decree awarding a divorce from bed and board on the ground of desertion and abandonment, defendant appeals.

*Decree affirmed.*

*M. C. Archer, T. J. Sayre* and *Chas. E. Hogg,* for appellant. ·

*J. L. Wolfe,* for appellee.

POFFENBARGER, JUDGE:

The decree complained of awards a divorce from bed and board to the plaintiff, the wife, on the sole ground of desertion and abandonment.

The parties were married in January 1913, and resided together for about a year, when a separation occurred, which the defendant insists was not in any sense a desertion and endeavors to excuse on the ground of necessity. Each had previosuly been married, and the defendant was the father of nine children, two of whom had not arrived at the age of maturity and were of tender years. The plaintiff was childless and unaccustomed to the company and care of children. She owned a good farm, and he claimed some interest in another tract situate about seven miles from hers. At and before the date of the marriage, it was agreed between them that they should reside on her farm. After the marriage, he removed his personal property to her place, and, with her consent, took some of the children with him, but she says they were to stay only so long as their presence should be agreeable to her. She further contends that the permission so given was a departure or concession on her part, from an antenuptial agreement that he should not bring any of his children with him, but that, on the contray, he should provide for them elsewhere.

His version of the arrangement is somewhat different. He says some of her relatives were living with her at the date of the marriage and he was not to come there until they left, and it seems he did not do so until then. He says she agreed to permit him to bring the two younger children with him, and, later invited an older daughter to come along. According to his testimony, she spent a few days at his home, after the marriage, on two occasions, to become acquainted with his children and obtain information from which she could determine whether she would permit him to bring the younger ones along with him. She does not deny having made this investigation and experiment, nor that she extended the invitation imputed to her by her husband. He does not directly deny the making of an antenuptial agreement barring the presence of his children from her home. He says the subject was frequently discussed by them, before the marriage, but he does not know whether they agreed about the matter until after the marriage. As to how long the children remained at her home, the relations between them and the

plaintiff, while there, and the circumstances and time of their departure, the evidence is meager and indefinite. He left her home in March, 1914, and they seem to have preceded him. This comes by way of inference from the testimony of both. Some of them were at his place and the others residing elsewhere, some permanently and some temporarily; and some of those not there expected to return to it. In this situation, he felt it to be his duty to go himself and stay long enough to put out a crop for them, at least, and so proposed to his wife. At first, she assented to it, but, later and after consultation, with her brother, objected. Thereafter, he gathered up his household goods, clothing and some other personal property, she assisting him, and moved away, but expecting, he says, to stay with her and let the children have the use of the property he was taking away. He seems to have left some of his cattle and sheep on her place, and they later made a settlement respecting them. For two or three days, the husband came back, but only to get some things he had left. He left against her will and over her protest, saying his daughters had written him letters demanding that he take the household goods back to the younger children and stay with them, and that, if ever they called for him, he left everything and went. In May, 1914, he came back and stayed a day or two, and, she says, vainly endeavored to get her to agree that he might come only occasionally and clandestinely, to the end that his children might not know he was visiting her. He was back again in June for a day or two. On both of these occasions, he first had friends intercede with his wife for the privilege of returning, and she seems always to have been desirous to have him stay with her, but he could not be induced to do so. In August of that year, she was very sick and he visited her and assisted in nursing her. He accompanied her to Parkersburg, for a necessary surgical operation, and brought her home, when she was able to come, but he continued to make his home with his children.

On the occasional visits he made to her, between March and August, 1914, before she became ill, they cohabited, but he never brought his clothes back, nor had any washing or mend-

ing done at her home. The only work he had her do for him was the mending of his rain-coat. About the time he left her, she rented her corn land to another man. He raised a crop on his own land, which required his time, attention and labor. This had to be gathered in the fall. He had his grain, feed, horses and some other stock at his farm.

In the early part of December, 1914, the wife brought their relations to a crisis by a demand that he bring his stock, feed and clothing to her place and make his home there, after having either procured an older daughter to come and take care of the younger children or provided a suitable place for them. He seems to have agreed to comply, for he admits he went down to see what he could do, but, instead of moving, he wrote a letter telling her the weather was too bad and asking permission to leave the feed and stock. Her reply promptly sent was a flat and emphatic refusal and demand that he comply with the conditions named. He remained at his place until February 17, 1915, when, on the intercession of a friend and the signing of an agreement not to leave the home and farm of his wife and to disregard any attempt by his daughters to interfere with his marital relations, he was permitted to return. Having remained with her a day or two, he left again to make provision for the younger children, but one of the older ones interfered in some way, and, instead of coming back, in accordance with his promise, he wrote her another note of excuse and explanation.

He says the older children wanted to take the younger ones and care for them and that now he has them provided for. Just why he could not comply with his wife's demand as to them, he does not say. He expected to leave them at their old home and she objected. She objected conditionally, not absolutely. He was either to have an older sister stay with them or find homes for them elsewhere, and he says the older children were willing to take care of them. Nevertheless, for a period of eight months, he neglected or refused to make such provision as would enable him to comply with his repeatedly broken promise to his wife. In these later crucial days, his conduct is characterized by a clearly perceptible

degree of equivocation. In December, he could not move his
stock and feed. His silence as to his ability to dispose of the
children, warranted an inference of the removal of that ob-
stacle. In his testimony, he intimates that the demand as
to the children was not made until February, 1915, but her
letter of December 14, 1914, repeating the conditions named,
December 7, 1914, lays emphasis on that requirement. In
February, he could have moved the feed and stock but could
not arrange for the children. This equivocation and shift-
ing from one position to another to avoid compliance with
both solemn promises and legal duty reflects upon the entire
course of his conduct from March to December, 1914.

A careful analysis of the evidence, convinces us beyond
doubt that the wife was both willing and anxious to have him
stay with her and that, for some reason, he was determined
not to do so. Either the farm he claimed, the demands of his
children or a desire to maintain a separate business status
and individuality kept him away. The title to the farm he
claimed was held by two of the grown daughters, and this
fact may have emphasized and reinforced their demands. The
wife swears he told her he wanted to maintain secret rela-
tions with her until he could get the title out of the hands of
the daughters, and all the circumstances indicate that the
daughters, by means of their relation to the land, held him
away from his wife.

Of course absence unaccompanied by intention to abandon,
does not constitute ground of divorce. The intent must ac-
company the act of separation, but the mere protest and dec-
laration of lack of intent, by the leaving party, are not con-
clusive. His conduct may overcome the effect of his declara-
tion. The constant, uniform and persistent demand on the
part of the wife, for his resumption of regular cohabitation
with her, his knowledge of her firm attitude, his repeated
promises to comply, his professed ability to do so and his
persistant refusal on different and inconsistent pretexts,
aided by proof of declarations of intent to desert, amply
justify the trial court's findings of insincerity in the pro-
testations of the defendant's loyalty, and actual intent on
his part to desert the wife. A husband's right to absent him-

self from the home temporarily, in the conduct of his business, is clear and incontrovertible, but it can no more be made a shelter and cover for bad faith than any other legal principle can be perverted to a wrong use. While holding on to such marital rights as are beneficial to him, a husband must comply with such obligations of the marital relation in favor of the wife, as constitute essential and vital parts of that relation, and especially those non-performance of which legally justifies severance thereof. The obligation to cohabit in the legal sense of the term is one of that kind.

The extent of the right of the husband to determine the place of residence and membership of the household, which so often perplexes the courts, is not appreciably involved here. An incident of the marriage agreement was the intention of both parties to reside at the wife's home, and there has been no attempt on the part of the husband to fix another place of abode. Though he suggested temporary residence at his place, at one time, and the renting of her farm and residence at some place remote from her people and his, at another, he never insisted upon it. He, at no time, demanded her residence at his old home, nor does it appear that it would have been practicable. The daughters seem to have been hostile to the step-mother and they held the legal title to the land. If he had been absolute owner, the circumstances may have been such as to preclude right in him to compel her to live there. *Hall* v. *Hall,* 69 W. Va. 175 ; 34 L. R. A. N. S., 758 and note; *Buckner* v. *Buckner,* 118 Md. 101, Ann. Cas. 1914 B. 628 and note; *Brewer* v. *Brewer,* (Neb.) 113 N. W. 161, 13 L. R. A. N. S., 222 and note. The right must be exercised in a reasonable and fair way.

Nor is there occasion to define the right of the wife to prescribe the conditions under which the residence could have been maintained in her property. The husband's acquiescence in her election to remain there and his lack of provision of any other place of abode for her, imposed duty upon him to reside there with her. He absented himself and has not proved any fact or circumstances justifying his doing so. The burden of justification obviously rested upon him, not her, but the evidence seems clearly to disclose lack thereof.

He had at least one married daughter residing in the neighborhood, with whom, apparently, he could have placed the younger children at any time. This fact strongly tends to prove disinclination on his part either to be separated from his people, when such separation was practicable, or to submit himself to the restriction incident to residence with the wife in her property.

Perceiving no error in the decree complained of, we will affirm it.

*Affirmed.*