(No. 6320)

Submitted January 22, 1929.   Decided February 5, 1929.

*Benjamin Weiss* and *O'Brien & O'Brien,* for appellant.
*Wm. J. Gompers,* for appellee.

HATCHER, JUDGE:

In this suit the plaintiff obtained a divorce *a mensa* on the ground of desertion. The defendant filed a cross-bill alleging neglect, cruelty and desertion, and asking a like divorce. This case is singularly free from the sordid details which so often encumber divorce records. The story is simply one of a filial tie which was stronger than conjugal duty. True, there is "a woman in the case". But the discord wrought by that woman was due to overweaning maternal instincts and not to the wiles of a wanton.

These parties were married in June, 1926, and came shortly afterwards to live in the home of the husband's parents in Wheeling. Before the marriage they had agreed to live there until the following spring, when he was to provide her with a separate home. The parents were people of means, the home was comfortable and the young people were treated as members of the family. The mother-in-law, however, continued to exercise undivided dominion over the home. She is portrayed by the daughter-in-law as "a wonderful housekeeper", as efficient, masterful and even kindly. She did not intentionally affront and alienate the daughter-in-law. She simply gave full sway to her natural inclinations. The result was that she supervised not only her own home, but also the conduct and affairs of the young people; that she monopolized the time of her son which he might otherwise have spent with his wife and that she influenced him in matters which he should have submitted to his wife. The life of the wife in that home as narrated by her was a continual round of direction, correction and unsought advice from the mother-in-law in trivial matters too numerous to detail. Shortly after the honeymoon the wife began to complain to her husband about living in the parents' home and to entreat him for a home of her own where she could have him more to herself. He admits that she made numerous appeals to him in that respect. In fact he agreed with her that they should have a separate home, and in the fall of 1926 he commenced looking for one. This search continued at intervals up to the time of the separation. Although several places were found which suited the couple, they did not please the mother, *and were rejected by the son for that reason.*

In January, 1927, the wife, while on a visit to New York, became desperately ill with pneumonia, which confined her to bed until March 20th, when the attending physician pronounced her cured. The husband then urged her to return, but upon the advice of a specialist that she was not able to travel and also because she did not want to live in his parents' home, she convalesced in Long Branch, New York, until May, when she did return. During her convalescence, the husband consulted his attorney as to whether her absence

at that time constituted desertion. After her return, conditions continued as before. She contemplated leaving and secretly commenced to send away her belongings. But she remained undecided until July 23, 1927, when a criticism by her husband of a slight expenditure she had made climaxed the discordance, and she left without a goodbye. Immediately after departing, she sent her husband a telegram saying: "Sorry to be any financial burden. Hope now you can make up the deficit." On July 25th, she wrote as follows: "Dear Ernie: As I wired you twice, I am here at Long Branch. I came because my heart was so full and because our happiness which was something I had hoped for, seemed impossible under the circumstances. The friction caused by interference and your apparent disinterest in our married career has made me feel that perhaps you would wish it this way. I had looked forward to our being together in our own home— the only way we could have been happy and planned our lives properly. This seems further away than ever, in spite of the plans I tried to make in this direction. I am here with mother and hope that you and all are well. Let me hear from you. As ever, Irma."

Several letters were exchanged and on September 24, 1927, the wife wrote to the husband "should any attempt toward reconciliation be proffered in the future, that can always be discussed." He made no reply to this suggestion. This suit was instituted October 1st by order of publication, and although the husband knew the wife's address, she was not notified. In the latter part of October her attorney visited him and offered reconciliation if a separate home should be provided. The offer was refused. The attorney then asked for funds to arrange a Reno divorce, and was told that this suit had been instituted. Sometime later the wife's brother proposed a reconciliation to the husband on the same condition named by her attorney, which was also refused. The wife states that she loves her husband and will return to him if he will provide her a home of her own "no matter how humble." The husband says that he no longer loves her and rejects the offer. He has never made any attempt whatsoever at reconciliation.

The plaintiff was thirty years of age at the time of his marriage. He is a partner in a substantial finance company and has a yearly income of over $4,000.00. He testifies. that, although in debt, he would have provided his wife a home when a suitable one could have been found. He states that practically his only complaints against her are: (a) that she left him; (b) the manner of her departure; and (c) that she would not permit him to save any money. There is no testimony in support of the last charge.

The evidence shows conclusively that the misdirected kindness and efficiency of the mother-in-law made life in her home very unpleasant for the daughter-in-law; that the husband knew this and knew that his wife was yearning for a separate home; that he was able to provide her such a home; that his efforts to do so were frustrated by his mother; that while the wife's departure followed a tiff with the husband, his censure was simply "the last straw" upon an overload of other vexations, the real cause being the mastery of the mother-in-law.

Counsel for each party has sought to support his cause, by comparing these suits with or differentiating them from certain divorce decisions, particularly those of this Court. As it would consume much time to review severally the citations, we will pursue the shorter method of applying directly here the legal principles established by those decisions.

Desertion in divorce law consists (1) in the voluntary separation without justification of one spouse from the other with (2) intent to terminate the marriage relation. *Burk* v. *Burk*, 21 W. Va. 445, 453; *Alkire* v. *Alkire*, 33 W. Va. 517, 518; *Perine* v. *Perine*, 92 W. Va. 530; *Crounse* v. *Crounse*, 108 Va. 108; *Williams* v. *Williams*, 130 N. Y. 193, 29 N. E. 98, 14 L. R. A. 220, 27 Am. St. R. 517; Bishop, Marriage, Divorce and Separation, (1891), Vol. 1, section 1662-3. The necessity of a *concurrence* of these two circumstances is absolute. "Both must combine to make the desertion complete," said the Virginia court in *Bailey* v. *Bailey*, 21 Gratt. 43, 47. "Departure is not the test of desertion. The gravamen of the desertion contemplated by the third section of our Divorce act is not the mere physical absence of one of the married

couple from the other, but such absence in a prescribed condition of mind—a wilful and obstinate desertion." *Hahn* v. *Hahn*, 93 N. J. Eq., 296, 297, 115 Atl. 652. In order to avoid possible confusion, we will discuss the suit of each litigant separately.

## THE PLAINTIFF'S SUIT

The husband offers no evidence of a declared intention of the wife never to return to him. He rests his case as to her intention, solely on her conduct. Her conduct does evince design to withdraw finally from the home of his parents. But leaving that home does not necessarily imply a purpose to forsake him. *Renunciation of him* must be fully and clearly proven. *Reynolds* v. *Reynolds*, 68 W. Va. 15. She testifies that she did not intend to sever all marital relations with him. She is supported by her letter of September 24, 1927, leaving open the question of reconciliation and by the proffer of reconciliation through her attorney made in October, 1927, before she had information that suit had been brought. His brief devotes much space to impugning the wife's offers of reconciliation because they were conditional. As the law gave her the right to demand a home apart from his parents (a right hereinafter discussed) a condition to that effect in her offers of reconciliation was not improper. *Field* v. *Field*, 129 N. Y. S. 673. Her conduct is not inconsistent with her testimony. So the plaintiff fails to demonstrate that the defendant intended to relinquish him, which is "the principal thing to be considered." *Bailey* v. *Bailey*, *supra*. With that failure his case fails, and the circuit court erred in granting him a divorce.

## THE DEFENDANT'S SUIT

The law entitles a wife to a home over which she alone may preside. When there is no serious obstacle in the way of the husband providing such a home, she is not required to live in the home of his parents under their domination. The policy of the law is well defined in *Brewer* v. *Brewer*, 79 Neb. 726, 113 N. W. 161, 13 L. R. A., (N. S.) 222, 226. "Every

wife is entitled to a home corresponding with the circumstances and conditions of her husband, over which she shall be permitted to preside as the mistress. The defendant in this case has shown a strong sense of filial duty. This is commendable, but it must not conflict with the conjugal duty he owes to his wife. The family is the unit of the social organism, and, while the institution of new families to some extent involves the disintegration of the older household, it is absolutely necessary to continued social existence. When a man marries and founds a new family, he assumes new duties and obligations; and, when these conflict with his former ties, they must be held paramount. The very existence of the family depends upon the enforcement of this principle. Whatever his filial obligation may be, a man may not bring his mother to preside in his new home. That place belongs to the wife. Neither may he, without her consent, take her to the home of the mother, there to be under her domination and control, and when the wife objects to this, she does not thereby forfeit her right to support and maintenance.'' Concurring therewith is our own case of *Hall* v. *Hall*, 69 W. Va. 175; *Marshak* v. *Marshak*, (Ark.), 170 S. W. 567; Ann. Cas. 1916-E 206, L. R. A. 1915-E 161; *Hoffhines* v. *Hoffhines*, 146 Md. 350, 38 A. L. R. 332, and the host of cases digested in the annotation commencing on page 338; 9 R. C. L., p. 366, paragraph 152; 19 C. J., p. 60, note 84; Schouler, Marriage and Divorce, Vol. 2, paragraph 1642.

Plaintiff attaches some significance to the agreement of the parties, made before marriage, to live in the parents' home until the spring of 1927. That agreement is entitled to little consideration, as it belongs to the class of antenuptial contracts which are merged in the marriage contract. ''An agreement made by a woman before her marriage to live when married in the house of and with her mother-in-law is of no force; all such promises are merged and obliterated by the marriage contract.'' *Albee* v. *Albee*, 43 Ill. App. 370; *Marshak* v. *Marshak, supra;* 30 C. J., p. 675, section 5. Besides, spring came, and brought no home apart from the parents. The contention is also made that the husband had never refused the wife a separate home, and was attempting

to find one when she left him. In view of the fact that his failure to provide such a home was due solely to his ready submission to the objections of his mother, his attempts are wanting in sincerity.

"A party who has adequate cause against the other for a judicial separation or dissolution does not commit desertion by leaving him." Bishop, *supra*, section 1754. Therefore, when a wife, who has left her husband seeks divorce on the ground of desertion, she may justify her separation by showing such misconduct by him, as is cause for divorce. *Alkire* v. *Alkire*, 33 W. Va. 517; *Reynolds* v. *Reynolds, supra; Perine* v. *Perine*, 92 W. Va. 530, 532. "The reasonable cause which justifies a plaintiff in separation must be a cause which the law has fixed as a cause for divorce." Nelson on Divorce and Separation, section 95. The following testimony of the wife, undisputed, establishes the existence of that cause: "I had been complaining to Ernie, and he would not pay any attention to the treatment I was receiving. I don't know how many times I said to him, 'Ernest, there is a limit to a person's endurance. I cannot stand this forever.' I was losing weight. I was afraid of becoming ill again." When a husband unnecessarily and heedlessly imposes on his wife a situation which distresses her mentally and impairs her health, as was done in this case, he is guilty of a form of cruelty which is ground for a limited divorce under section 6, chapter 64, Code. *Goff* v. *Goff*, 60 W. Va. 9, and authorities cited, pages 16 and 17; 19 C. J., pp. 49 and 50, sections 88 and 89; 9 R. C. L., p. 335, section 115. Bishop asserts that the husband "will be presumed, *prima facie*, to have meant the separation which his ill conduct brought about and justified." Bishop, *supra*, section 1721. A safer rule, perhaps, is that the husband will be presumed to have intended to cause a separation, if that is the natural consequence of his treatment. "The husband is the deserter, even though the wife leaves the matrimonial abode, if the separation is due to conduct on his part calculated to bring it about." *MacPherson* v. *MacPherson*, (N. J.), 135 Atl. 91; 19 C. J., p. 61, section 116-117. The proof herein warrants the application of the latter rule. In fact, his refusal since she left him, to be reconciled to her and

to provide her a home apart from his parents as well as his declaration that he does not love her, not only confirm the above presumption, but clearly indicate an intention to be permanently rid of her. In *Hoffhines* v. *Hoffhines, supra,* a case in which the facts are similar in all material respects to this, the court granted the wife a divorce, holding: "It is abandonment and desertion by the husband for him, without just cause, to treat his wife in such a manner as to compel her to leave him.' Accord: 9 A. & E. Ency. Law, p. 770; Schouler, *supra,* section 1644; Nelson, *supra,* section 88; 9 R. C. L., p. 366. We therefore hold that it was error to deny the defendant the prayer of her cross-bill.

The decree of the circuit court is accordingly reversed as to each cause; the bill of the plaintiff is dismissed, and the cause of the defendant on her cross-bill is remanded.

*Reversed; plaintiff's bill dismissed; cause on cross-bill remanded.*