# CHARLESTON.

KATHERINE ROBERTS *v.* H. W. ROBERTS

(No. 6475)

Submitted October 22, 1929. Decided October 29, 1929.

*Simms & Staker* and *Lilly & Lilly,* for appellant.
*J. F. Eaton* and *Connor Hall,* for appellee.

HATCHER, JUDGE:

This is a suit in which the plaintiff was awarded a temporary divorce and the sum of $75.00 a month for her maintenance until the further order of the court. The defendant appeals on the ground that the evidence does not justify the decree.

The parties were married in April, 1928, and separated the following July. The evidence of the one as to what led up to the separation is entirely at variance with the evidence of the other. The brief of counsel for defendant relies almost exclusively upon the evidence in favor of his client. But as the lower court has determined the controversy in favor of the plaintiff, we cannot disturb the finding, if there is evidence to support it, unless the decree is plainly erroneous. *Walton* v. *Pritt,* 93 W. Va. 375; *Wood* v. *Johnson,* 102 W. Va. 484. Consequently, we must look primarily to the sufficiency of plaintiff's evidence. That evidence is, in effect, that from almost the very day of the marriage until the separation, her husband indulged in prolonged fits of jealousy which flared over very trivial and innocent matters. When in these moods he pouted and berated her so unreasonably as to make her married life very unhappy. The main objects of his jealousy were Ed and Virginia Lewis. Virginia was a niece of plaintiff and

Ed was Virginia's husband. The Lewises lived in a house owned by the plaintiff. As no renter could be obtained for the property, the plaintiff permitted them to occupy it free of rent. She had lived with them prior to her marriage with defendant, and had been very intimate with Virginia for years. From time to time after the marriage, she and the Lewises exchanged visits. This association irritated the defendant very much. On the morning of July 19th, the plaintiff asked the defendant to take her to her house so that she could look after some property. He complied with her request, though in a very surly manner. She told him she would telephone him when to come for her. While there she remarked to Kenneth Dittle, the husband of another niece, that she had decided to leave Mr. Roberts. However, she called him by telephone on the 21st for the purpose of having him come for her. He refused to talk to her except to say "Shame on you." She then went to his place of business to see him and again he rebuffed her. He did permit an interview later, in which she attempted to effect a reconciliation. But he accused her of sleeping with Lewis while at her house on the 19th and "hardened his heart" against her, and refused to permit her to live with him. His attitude is attributable to his belief that Mrs. Lewis was away from home on July 19th, and that the plaintiff and Lewis had spent the night together there. He says that he went to plaintiff's house that night and knocked on the door but obtained no recognition from within; and that the following morning he was informed by "some lady" living in a house next to plaintiff's that Lewis had come home the night before. She was not produced as a witness. Both defendant and his son (by a former marriage) testify to a statement made by plaintiff, which the defendant construes as an admission by her of sexual relations with Ed Lewis. She denies making the statement. She says that both Lewis and his wife were away on the 19th, and that Kenneth Dittle and his wife were in the house during her visit. She is supported in this by the Dittles. Both she and Lewis deny any illicit relations and Mrs. Lewis acquits her of any impropriety. The preponderance of the evidence is against the accusation of lewd conduct with Lewis.

The defendant assumes the position that plaintiff deserted him on July 19th. If his conduct toward her was as unreasonable and oppressive as she describes, then the law will presume that he intended to cause her to leave him: it will not permit him to take advantage of his own wrong; it will not construe her departure on the 19th as legal desertion. *Horkheimer* v. *Horkheimer,* 106 W. Va. 634, 641. Assume, however, that her decision to leave him was not warranted by his treatment. She attempted a reconciliation which he rejected because of his suspicions of her and Lewis. His mistrust was not well founded, and did not justify his refusal to live with her. The record discloses nothing in the testimony of plaintiff and her witnesses which discredits them. We cannot say; merely because of defendant's contradictions, that the lower court was ''plainly wrong'' in preferring plaintiff's evidence. We cannot say that the finding in her favor is unwarranted even if defendant's evidence were held by us to balance the facts or subject the finding to grave doubts. 4 C. J., p. 883, sec. 2855; *Shaffer* v. *Shaffer,* 51 W. Va. 126. The preference of the lower court imposes on us now the duty of regarding her evidence favorably. 2 R. C. L., p. 106-7, sec. 173. Upon doing so, her evidence demonstrates that the conduct of defendant caused the separation and was in legal effect desertion of her by him, and therefore amply supports the finding in her favor. See *Horkheimer* v. *Horkheimer, supra,* and authorities there cited.

The defendant protests the sum imposed for the support of the plaintiff, on the ground that his property and his income do not justify any such amount. If we consider his evidence alone on this subject, it would seem that his protest is well taken. But the trial judge announced before the evidence was closed that he preferred to conclude the case on its merits at that time, reserving the right to go into the property rights of the parties thereafter. Record, p. 104. The decree of divorce expressly provided that the question of property rights would be taken up and disposed of at a later date. Because of the ruling of the court, it is a fair inference that the plaintiff postponed the completion of her evidence as to the property. Moreover, the allowance was temporary.

We are, therefore, of opinion that the defendant should have moved the lower court to conclude the evidence on that subject and to modify its decree as to the award before making it a point of error here.

The decree of the lower court is accordingly affirmed.

*Affirmed.*