KATHRYN MARY HUGHES *v.* CHARLES HUGHES, JR.

(No. 7376)

Submitted February 28, 1933.   Decided March 7, 1933.

(Rehearing denied June 1, 1933.)

*Lloyd Arnold,* for appellant.
*Martin Brown,* for appellee.

HATCHER, JUDGE:

This is a divorce suit.   The parties were married October 10, 1928, and resided in the home of the husband's parents until April 20, 1930, when the wife returned to the home of her parents with her girl baby born a few weeks before the separation, where she has since remained.   The wife brought the suit charging defendant with constructive desertion, cruelty, etc.   He answered charging her with actual desertion.   The circuit court awarded him a divorce from bed and board and

the custody of the infant child. As the plaintiff is the appellant, reference will hereinafter be made to the parties simply as plaintiff and defendant.

The plaintiff testified to a host of petty annoyances and tyrannies which she suffered in defendant's parental home from his mother (a lady of character but not of tact). The plaintiff said she had repeatedly besought defendant for a home of her own, and that her only reason for leaving and continuing to absent herself from him was his failure to provide a home apart from his family. The defendant testified that she never objected to living in his parents' home; but that after the baby was born she insisted the child must be reared under the influence of the Catholic church and said repeatedly she would leave him if he did not so agree, and that she did leave him because he refused to make that agreement. No witness supports the defendant's testimony relating to the plaintiff's demand of Catholic supervision for her child, and she denied the demand *in toto*. The record discloses that she had been reared a Catholic, but shortly after the marriage she willingly left the Catholic church and joined the church of the defendant. She exhibited no religious prejudices as a witness, though subjected to a most searching examination thereon both by defendant's counsel and the trial chancellor. To the contrary, she stated to the chancellor without equivocation that it made no difference to her whether the child were reared a Catholic or a Protestant. There is no explanation offered by the defendant why plaintiff should display such convincing tolerance both in conduct and speech and yet have delivered the intolerant ultimatum that the child be committed to the care of the very church which she herself had renounced. Without explanation or corroboration it is not believable that she did so, and the lower court was plainly wrong in accepting defendant's testimony to that effect. ''While findings of fact by a trial chancellor will not ordinarily be disturbed on appeal, this court will not hesitate to overrule findings based upon what appears to it to be incredible testimony.'' *Shook* v. *Shook*, 111 W. Va. 284, 161 S. E. 235.

Defendant further testified that sometimes after she left he was making tentative arrangements with a Mr. Miller for a house and telephoned her about 11 a. m. on a Sunday morn-

ing to come and look at it; that she refused to do so; and that he then hung up the receiver without waiting for an explanation of her refusal. She admitted that he did mention the Miller house but insisted that he never offered to establish a home for her.

The defendant was earning enough money to maintain a modest home, and it was his primary duty to establish a home for his wife apart from his family. It was not legal desertion for her to leave the home of his parents and refuse to live with him until he performed that duty. See *Horkheimer* v. *Horkheimer*, 106 W. Va. 634, 146 S. E. 614 and cases cited. After her departure he did not perform his full duty merely by asking her to look at the Miller house (which is all he claims to have done), and terminating the conversation without awaiting an explanation of her refusal. On the whole record it is manifest that he has made no serious effort to provide plaintiff with a home of her own. His failure to do so makes him the deserter. *Horkheimer* v. *Horkheimer, supra.*

There is nothing whatsoever in the record which reflects in any way upon the character of the plaintiff or that of her family or upon her fitness to have the custody of the baby. There is no reason apparent why the welfare of the infant would be promoted in any way by awarding it to defendant. On the contrary, he is a traveling salesman and could not bestow on the infant much personal attention. In fact, the record discloses that he has demonstrated but little interest in the child thus far. He admitted on the witness stand that he was permitted to visit at the home of his wife's parents but in the preceding nineteen months he had seen the child only some two or three times. The rule is settled that ordinarily an infant of tender years should remain under the care of the mother in cases of separation such as this. *Beaumont* v. *Beaumont,* 106 W. Va. 622, 146 S. E. 618; *Reynolds* v. *Reynolds,* 109 W. Va. 513, 514, 155 S. E. 652. There is no reason to except this infant from the rule.

Therefore, the decree of the lower court will be reversed; the plaintiff granted a divorce *a mensa et thoro* and awarded the custody of the child; and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*