NANNIE BEUHRING *v.* L. D. BEUHRING

(No. 6929)

Submittd September 29, 1931.   Decided October 7, 1931.

*George S. Wallace,* for appellant.
*R. L. Beuhring* and *W. T. Lovins,* for appellee.

HATCHER, JUDGE:

The domestic relations court of Cabell county granted the plaintiff a divorce *a mensa*. The circuit court reversed the lower court and granted the defendant a divorce *a mensa*, and the plaintiff secured an appeal here.

The parties were married in 1919 and resided in a house separated by a narrow walkway from another house in which lived a daughter of defendant by a former marriage, who is now about 28 years of age. Both houses were on the same lot, and belonged to the estate of defendant's deceased wife. The plaintiff testified that the defendant promised, after their marriage, that he would get a house "away from there, if things did not go right"; that because of the enmity of defendant's daughter to her, things did not go right; that she once attempted to find another place upon her own initiative, but this angered defendant and he told her to leave if she didn't like it, and that he had lived a long time without her and could live a *longer* time without her; that in September, 1928, the daughter cursed, assaulted and threatened her; that during the year following she told the defendant time and and again that she was afraid of the daughter, that the situation was making her a nervous wreck and begged him "all the time to get a home away from there", but that he would get angry and tell her to stay at home and if she didn't like it to go; that again in September, 1929, the daughter rudely assaulted her, cursed her, and threatened her life, and so terrorized her that she left home and went to her own people; that she telephoned her husband of the second assault immediately after it was made and of her intention to leave, to which he replied "all right" and hung up the receiver; that about a week afterwards he telephoned her that he had decided to go on living with his daughter and that she could stay where she was; that later, in a conversation with her about their affairs, he grew very angry, and with an open knife in his hand said "you will never get another penny off of me," and that she was afraid of him.

The defendant does not controvert directly any of the above statements. He testified that the trouble between his wife

and daughter was beyond his control; that he talked with his daughter and "prevailed" on her not to annoy his wife, which was all he could do; that in the year following the first assault, the· trouble was "practically forgotten and passed over"; that he has always wanted to live with his wife, and is now willing to live with her and protect her in any way that he can; that he does not recall the incident about the open knife, but if he had the knife in his hand it was merely for use in manicuring; and that after plaintiff left him he offered to go with her to her choice of five other houses owned by him, and upon her rejection of that offer attempted without success to interest her in other property where she would be entirely away from the daughter.

The offer of defendant, however, was made in a very formal letter which does not substantiate his testimony. After listing his five houses, the letter proceeded as follows: "If you will designate which one of these houses you prefer to move into, I will notify the present tenant and believe I can get possession of any of them within 30 days. When the same becomes vacant *you are at liberty to move into it."* (Italics ours) There is nothing whatever in the letter indicating that defendant would join plaintiff in the house she might select. The plaintiff further testified that she called the defendant on the telephone about one of the five houses, reminded him that he had said she could have it, and wanted to know what he was "going to do about it", to which he replied, "I don't know. I have not decided yet", and abruptly terminated the conversation. Defendant denies making this reply but the evidence was taken before the trial court, who observed the demeanor of the witnesses, and ·his decision in favor of plaintiff impels us to credit her statement.

While it is the conceded right of the husband to determine primarily the location of the matrimonial domicile, that right must be exercised reasonably, and he may not arbitrarily require his wife to live with or in close proximity to a relative who mistreats her as did the daughter in this instance. *Powell* v. *Powell,* 29 Vt. 148, 150; 30 C. J., subject Husband and Wife, sec. 18; and the annotations in 13 L. R. A. (N. S.) 222, 34 L. R. A. (N. S.) 759, Ann. Cases 1914B 633, L. R. A.

1915E 161, and 38 A. L. R. 338. If such a requirement is mode, the wife is justified in leaving the husband and may charge him with constructive desertion. 9 R. C. L., subject, Divorce, sec. 152; *Horkheimer* v. *Horkheimer,* 106 W. Va. 634 and cases there cited.

A *bona fide* offer of the defendant after the separation to provide a home for both the plaintiff and himself not in proximity to the daughter might have required the plaintiff's acceptance. But when we take into consideration his failure to fulfill his promise to her to provide such a home (if things did not go right), his anger when she attempted to find another house, his long and continued indifference to her unhappiness and to her pleas for another home, his contemptuous remarks and callous attitude as to her leaving him, the failure of his offer (in the letter) to state affirmatively that he would live with her in the house she selected and his subsequent delay about making good even his unilateral proposal, we are of opinion that the trial chancellor was well warranted in concluding that the offer of defendant was not made in good faith. We accordingly reverse the decree of the circuit court and reinstate and affirm the decree of the domestic relations court.

> *Decree of circuit court reversed; decree of domestic relations court reinstated and affirmed.*