LORAINE BALL

*v.*

GEORGE BALL

(No. 12913)

Submitted January 26, 1971.    Decided February 23, 1971.

*Wm. Bruce Hoff,* for appellant.

*Wilbur D. Webb,* for appellee.

BERRY, JUDGE:

This is an appeal from a judgment of the Circuit Court of Calhoun County of March 29, 1969, awarding the plaintiff Loraine Ball separate maintenance in the amount of $125 a month and denying relief to the defendant George Ball. The plaintiff instituted this civil action in the Circuit Court of Calhoun County for separate maintenance and the defendant, her husband, filed an answer and counterclaim praying for a divorce. The appeal by the husband was granted December 16, 1969, and the case was submitted for decision on arguments and briefs January 26, 1971. The record in this case consists of about 300 pages, much of which is of little importance to the principal question involved dealing with the factual situation with regard to the reason for the plaintiff leaving the matrimonial domicile on June 2, 1967.

The theory of the plaintiff is that the marital home of her and her husband was established at the home of the husband's parents, Mr. and Mrs. John Ball, that the husband did not give the plaintiff a separate home in which she could live with him and their three children, and that by virtue of this he was guilty of constructive desertion which justified her leaving at the time she did. The plaintiff also accused the defendant of adultery, which may have had something to do with her state of mind, but the evidence did not warrant any such charge. The defendant's counterclaim for a divorce was based on just the opposite theory from that of the plaintiff, his contention being that he never at any time did anything that would give her reason for leaving and therefore she was guilty of desertion.

After the parties were married on July 4, 1948, they went to live with the defendant's parents in a thirteen-room house located on a 500-acre farm owned by his parents. It appears that when this took place the plaintiff agreed to this arrangement and remained there for 19 years during which time she bore the defendant three children, two daughters, ages 19 and 16 and one son, age 14. It is clearly established by the evidence that on several occasions during the time the parties lived with the parents of the defendant, the plaintiff requested

the defendant to establish a separate home for them, but that no action whatsoever was ever taken to comply with her request.

After the plaintiff left the John Ball home on June 2, 1967, she established separate quarters of her own in Grantsville, West Virginia, which was only a few miles from the John Ball farm, and thereafter did not return. Instead, she went to work and successively held several different jobs in an attempt to support herself, the last of which appears to be as a nurse's aide in a hospital located in Grantsville. She is sharing an apartment with another woman and the expenses of the apartment and the bare living expenses would total approximately the amount the trial court allowed her.

After going to work, the plaintiff underwent two serious major operations which entailed considerable expense. Apparently, the amount awarded is not questioned by the defendant, as his main objection is the allowance of any amount whatsoever, and it is the contention of the defendant that the court erred in making factual findings that the plaintiff had good cause for leaving, thereby holding the husband's contention of her desertion to be without merit.

Legal questions were raised as to the manner and time of the filing of the action by the plaintiff. The action for separate maintenance was filed on April 17, 1968, some nine months after she left the John Ball home, after which nothing more happened until June 4, 1968, when the defendant filed to the complaint an answer denying that he had been at fault in causing the plaintiff to leave and denying the charge of adultery with one Hope Westfall; and in addition, he filed the counterclaim for divorce on the grounds that the plaintiff was a deserter. Nothing is contained in the record to justify the filing of defendant's answer and counterclaim after the time required for such filing by the Rules of Civil Procedure, but a statement in the petition to this Court refers to the filing as being within an extension of time.

It is asserted by the defendant that the plaintiff intentionally attempted to delay or interrupt the running of the

one year period necessary to obtain a divorce on the grounds of desertion and therefore her action was instituted in bad faith. There is no evidence in the record to support this contention. On the other hand, the defendant's delay in filing his answer until one year had elapsed from the date he claimed she was guilty of desertion would allow him the statutory period for divorce.

The defendant stated that when they were married the plaintiff knew they were going to live with his parents and offered no objection; that they lived there for almost twenty years during which time the house was improved at a cost of about $5000; that it had running water and modern conveniences. The plaintiff did not seem to have much difficulty with her in-laws until a few months before she left. The family was quite industrious and operated an enterprising business. The defendant and his parents apparently worked almost every day at the family-owned business located in Grantsville thus leaving the plaintiff alone at home on the farm while the children were in school. It also appears that during their marital life the defendant also worked at night, and very seldom took his wife out in the evenings, even though she requested him to do so on many occasions.

The plaintiff's evidence clearly indicates that for several years, probably for more than eight years before she left, she on many occasions asked to have a separate home for her family. This is corroborated by the defendant's evidence with the main difference being that his evidence tries to show that she was not very insistent in her demand for a separate home, although she contended that she was quite persistent and insisted that something be done with regard to the situation on numerous occasions. She testified that she could get no satisfaction out of him with regard to her requests. The defendant's only excuse was that he could not afford to build a separate house although he appeared to have continuous employment, even necessitating that he work nearly every night. The other members of the family admitted that they had heard the plaintiff make requests for a separate home, but some of them testified that it was not done very often and with very little insistence. The trial

court found in the plaintiff's favor on this question in its finding of facts that she had sufficiently requested the defendant to furnish a separate home for her and that he had failed to do so.

About one year before she left, the plaintiff began to suspect that her husband was having an affair with a woman by the name of Hope Westfall who was a friend of the family. In order to confirm her suspicions she began devoting some time to attempts to catch them together, and enlisted the help of her friends to transport her into town and along the road to where the Westfalls lived in an attempt to accomplish her purpose. The Westfalls were supposed to be close friends of the Balls and the children of both families were about the same age, and they lived only a few miles apart. During this same time the plaintiff was apparently left by herself until late in the evenings as she was unable to drive one of the three cars belonging to the family and used in connection with the work and personal use of the family. Consequently, she started walking out onto the public road to a nearby filling station and neighbor's home soliciting rides into town where she could ascertain what her husband was doing, particularly at night. The family began to object to this conduct and it finally resulted in a rather violent dispute which caused her to leave.

The night before she left she went walking to see a neighbor and then to a filling station from where a boy took her into town in his automobile. She found her husband and he drove her back to the farm house that night. After they returned home her husband went to the bath house, and a quarrel ensued between her and her father-in-law. He objected to her walking on the road when they had automobiles available although she could not drive. The plaintiff stated that her father-in-law told her that if she continued to walk on the road, "with your tail over your back," she could leave. She also testified that her husband overheard the quarrel and did nothing about it. The father-in-law denied that he used those exact words, but admitted he did tell her that she had put on a pretty good show and for her not to do it again, at

which time she said she was going to leave, and he said, "In that case, there is the road." The plaintiff said she slept with her husband that night, but packed her bags and left the next morning while the family was working. She went into Grantsville and stayed with her sister in her apartment. The defendant denied that she slept with him that night and said he did not inquire as to why she was not there as she customarily had been for twenty years and that he did not know that she was getting ready to leave until he was told that she had gone to Grantsville and moved in with her sister.

The plaintiff testified that she had attempted a reconciliation by telling her husband that she would come back if he would get her a house. The defendant denied this, although he admitted he had had a conversation with her in a restaurant in Grantsville and had given her some money.

The charge of adultery was not proved and was properly dismissed by the trial court. At most, the plaintiff may have suspected her husband because she had heard that he and Hope Westfall had been seen together, but she told people that she suspected him of having an affair with this woman. It appears that the Westfalls heard about the rumor and asked the plaintiff and defendant to meet with them and discuss the matter. Hope Westfall died before the case was tried and her husband, Don Westfall, testified at the hearing. He stated that they had gotten together and discussed the matter, and that the plaintiff had said she was mistaken; that they became friends again and had taken a trip together some months before plaintiff left the farm. The plaintiff, during the trial, attempted to prove her husband's guilt of adultery with another woman by the name of Judith Rollyson, which involved rather suspicious actions on his part, but the complaint contained no allegations with regard to her and such evidence was not considered by the trial court.

The custody of the three children was awarded to the defendant by the trial court although the judge observed that either party was a suitable person to have custody. Apparently, the court took into consideration that the children stated they desired to stay with their father in the only home they had ever known.

The evidence concerning the mother and children, which is rather strange, indicates that the children had practically no contact with their mother after she left. They saw her occasionally on the street and she made a few telephone calls to her former home and sent them Christmas presents. However, the children returned the presents with the explanation that they felt she could not afford to buy them. Even while she was a patient in the hospital her children did not visit her.

It should be pointed out initially that the plaintiff's complaint was filed on April 17, 1968, and the defendant's answer with counterclaim was not filed until June 4, 1968, one and one-half months after the complaint was filed. Therefore, it was not filed within the required time as provided for in Rule 12(a), Rules of Civil Procedure, and there is nothing contained in the record which would justify the late filing or any compliance with Rule 6(b) R.C.P. See *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 175 S.E.2d 452. A statement in defendant's brief indicates there may have been some extension that does not appear in the record.

Apparently, if there was no justification or excuse, as required by the Rules, which should be contained in the record if the Rules have been complied with, the complaint could have been taken for confessed because no proof or corroboration is required for separate maintenance and support as is required for divorce. Rule 81(a) (2), R.C.P.; *Wolford v. Wolford*, 133 W.Va. 403, 56 S.E.2d 614.

Before the Rules of Civil Procedure were adopted in this state it would appear that perhaps a cross-bill could not be filed for a divorce where the original bill was for separate maintenance. *Wolford v. Wolford, supra; Gallaher v. Gallaher*, 147 W.Va. 463, 128 S.E.2d 464. However, the West Virginia Rules of Civil Procedure, which are applicable to divorce cases and separate maintenance, Rule 81(a) (2), would appear to sanction such practice under Rules 13 and 18, R.C.P., but the Rules with regard to the timely filing of an answer and counterclaim must be complied with in all proceedings under the new Rules. 12(a) and 6(b), R.C.P.

The plaintiff only had to allege and prove failure to support and desertion regardless of the time involved and was not required to prove any ground for divorce in order to obtain separate maintenance. Code, 48-2-29, as amended; *Reese v. Reese*, 152 W.Va. 203, 161 S.E.2d 92. However, the defendant would have to prove desertion for a period of one year before he would be entitled to a divorce on that ground as alleged in his counterclaim. No doubt that was the reason for filing the answer and counterclaim after a year had elapsed from the time the plaintiff left.

However, it is the defendant's contention that the plaintiff's complaint was brought in bad faith in order to interrupt the running of the statutory desertion period of one year. The evidence does not justify such contention. It clearly appears and was so found by the trial court that the plaintiff instituted her action in good faith on the grounds of constructive desertion because of the fact that her husband had not furnished her a separate home after being requested to do so, and that she had been requested to leave the home of her father-in-law in which she had been living. The syllabus of the case of *Hewitt v. Hewitt*, 120 W.Va. 151, 197 S.E. 297, is applicable to this case, wherein the following language appears: "Time operates against a deserting spouse from the date of the desertion, though the running of the statutory period may be interrupted and suspended by *bona fide* litigation between the parties." It would therefore appear the defendant could not in any event have prevailed in his cross-bill for divorce in the instant case.

The determining question in the case at bar is who was at fault at the time the plaintiff left the home in which they were living. If the action on the part of the defendant or of his parents in not furnishing a home and in telling her she could leave if she did not conform with the father-in-law's request justified her leaving, she would be entitled to separate maintenance. If she was not justified and left without sufficient cause or reason, she would be guilty of deserting the defendant and he could obtain a divorce after the required time had elapsed omitting the period of litigation over the separate maintenance. The husband has the right to determine

the matrimonial domicile, but this right must be exercised reasonably and he may not arbitrarily require his wife to live with members of his family who mistreat her. *Beuhring v. Beuhring*, 111 W.Va. 135, 161 S.E. 25; *Harbert v. Harbert*, 122 W.Va. 603, 11 S.E.2d 748.

However, the wife is entitled to a separate home over which she may preside, and it is the duty of the husband to provide such a home if he has the means with which to do so. This rule of law is clearly stated in the third syllabus of the case of *Horkheimer v. Horkheimer*, 106 W.Va. 634, 146 S.E. 614, which reads as follows: "The law entitles the wife to a home over which she alone may preside. When there is no serious obstacle in the way of the husband providing such a home, she is not required to live in the home of his parents under their domination." In such case the husband is held to be the deserter if without just cause he subjects his wife to such treatment and compels her to leave him. *Horkheimer v. Horkheimer, supra.*

It was held in point 2 of the syllabus of the case of *Hughes v. Hughes*, 113 W.Va. 698, 169 S.E. 403, that: "When a wife has refused to abide with a husband in the home of his parents, and he wilfully remains with his parents and refuses to furnish her a home elsewhere, he having the means and the opportunity to maintain a separate home for her, he becomes a deserter at law."

It is the contention of the defendant that the complaint did not have sufficient allegations to warrant separate maintenance, that the evidence was not sufficient to support such a claim and that the findings of the court did not contain a finding of fact with regard to the matter. These contentions are without merit, because the ninth paragraph of the complaint clearly states grounds that comply with the provisions of Code, 48-2-29, as amended, dealing with separate maintenance, which provides, among other grounds, that whenever a husband shall, without good and sufficient cause, have failed to provide suitable support for his wife, the plaintiff is entitled to separate maintenance. Paragraph nine of the complaint contains the following language: "That defendant, without

good and sufficient cause, has failed to provide suitable support for the plaintiff, his wife, since the 2nd day of June, 1967."

The finding of fact pertaining to this issue clearly states in appropriate language the requisite finding. It conforms both to the statute and the pleading wherein in paragraph nine of the findings of fact by the trial court the following language is contained: "That the plaintiff wife is entitled to support from her husband suitable to their station in life."

The trial court found from the evidence, which was conflicting, that the wife was justified in leaving the matrimonial domicile, and therefore was entitled to separate maintenance. Considering all of the evidence this Court cannot say that such findings were clearly wrong or against the preponderance of the evidence. This rule of law is succinctly stated in the 5th point of the syllabus of the case of *Lieberman v. Lieberman*, 142 W.Va. 716, 98 S.E.2d 275, in the following words: "The findings of the trial chancellor, based on conflicting evidence, will not be disturbed on appeal unless such findings are clearly wrong or against the preponderance of the evidence."

For the reasons stated herein, the judgment of the Circuit Court of Calhoun County is affirmed.

*Judgment affirmed.*