GRACE HYLTON, *Individually, etc. et al.*

*v.*

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, *a*

*corporation*

(No. 13590)

Decided July 20, 1976.

*Fred O. Blue* for appellant.

*Robert E. Holroyd* for appellees.

CAPLAN, JUSTICE:

This is an appeal from a judgment of the Circuit Court of Mercer County in a civil action wherein the plaintiffs, Grace Hylton, individually and as administratrix of the estate of George A. Hylton, deceased, and Princeton Bank and Trust Company, sought recovery on a certain life insurance policy sold to the deceased by the defendant, Provident Life and Accident Insurance Company, a corporation, hereinafter referred to as Provident.

The action was tried before the court without a jury and the court entered judgment for the plaintiffs. Upon

the denial of the defendant's motion for a new trial this appeal was prosecuted.

On August 27, 1970 George A. Hylton made an application in writing to Provident for insurance. This was a twelve-year decreasing term life insurance policy in the sum of $5,300.00. The Princeton Bank was named beneficiary, the purpose thereof being to cover the mortgage on the Hylton home. At the time of this action the amount of the policy had decreased to $4,649.11 which was the amount of the judgment.

In the written application alluded to above certain questions were asked relative to the health of the applicant. In answer to Question No. 6 Hylton indicated that he had had tuberculosis in 1948. This was indicated by encircling the word tuberculosis in the body of the question and by placing an x in the box designated "yes." There appears to have been an answer in the negative as to high blood pressure and any type of stomach, nervous, or heart trouble. In the answer to Question No. 7 of the application he indicated that he had not received medical or surgical advice or treatment or had any disease or injury not mentioned in the previous question within the last five years.

On September 4, 1970 Mr. Hylton reported to Dr. Frank Holroyd for a physical examination. In Part 3 of this medical examiner's report Dr. Holyoyd noted no irregularities respecting blood pressure and pulse and found no enlargement of the heart, murmur, dyspnea or edema. It is noted, however, that no E.K.G. or x-rays were made. In Part 2 of his medical examination Mr. Hylton indicated to Dr. Holroyd that his past health problems had been limited to tuberculosis in 1946, a hemorrhoid operation, an appendectomy and the surgical removal of a part of an ulcerated stomach. He answered in the negative as to having received treatment for dizziness, fainting or headaches, chest pains, high blood pressure, heart attack or other disorders of the heart or blood vessels.

He noted therein that he had had a routine checkup in 1968 by Dr. A. Kilonsky of Tallmadge, Ohio which included an E.K.G. Provident then wrote to Dr. A. Kilonsky and inquired of the results of the 1968 checkup, including the results of the E.K.G. A reply was received dated September 25, 1970 signed by Dr. F. Kilonsky with whom Dr. A. Kilonsky practiced until 1971. There was, incidentally, testimony in the record which indicated that both doctors treated George Hylton and that he was no more a patient of one than the other. This report indicated that his present condition was good; that he was in good health, having been seen last in October, 1969 in connection with colitis. The notation in relation to his E.K.G. was "Essentially negative."

George Hylton died on April 12, 1972. Subsequent to an autopsy the cause of death was stated as: "Rupture of the heart with massive hemopericardium due to acute myocardial infarction following thrombosis of the circumflex branch of the left coronary artery."

Grace Hylton demanded payment under the policy but Provident refused to pay on the grounds that the application of the deceased to obtain such policy contained misrepresentations, omissions, concealment of facts and incorrect statements which were fraudulent or material to either the acceptance of the risk or to the hazard assumed by the insurer and that such representations induced Provident to provide coverage which it would not have done if the true facts had been made known to it.

This matter came on for trial before the court without a jury on March 13, 1974, during which testimony was adduced on behalf of both parties. On June 26, 1974 the trial judge wrote to both counsel indicating that he had decided the case in favor of the plaintiffs. In this letter the court noted that it was obvious that the deceased did not disclose many things that he had told the doctors on previous visits; that Kenneth Storey, the underwriter for Provident, testified that had they known of these statements the policy would not have been issued;

that Dr. Hawey Wells, a pathologist who performed a post-mortem on the defendant, testified that there was no evidence that the deceased had at any time had any prior heart attacks; that witness Storey was never recalled after Dr. Wells had testified; and that the court's conclusion was that Hylton did not in these circumstances misrepresent any material facts for the issuance of the policy and that the policy should be honored by the insurance company. Judgment was subsequently entered in favor of the plaintiffs by an Order filed on July 30, 1974 wherein, among other findings, the court held "that George A. Hylton did not misrepresent material facts for the issuance of the insurance policy as proven by the evidence and that the policy should be honored by the defendant insurance company".

Upon this appeal the defendant complains that the letter of June 26, 1974 and the order of July 30, 1974 are in conflict. While the court therein related his decision to counsel, the letter was not made a part of the record and does not appear to be a written opinion as denominated by the defendant. The court complied with the requirements of Rule 52 R.C.P. by including its findings in its order. We conclude that there is no merit to this assignment of error.

The principal error assigned is that the finding by the trial court that Hylton did not misrepresent facts in his application for insurance is not supported by the evidence but rather that the evidence warrants a finding and an ultimate judgment that the misrepresentations, omissions, concealment of facts and incorrect statements of George Hylton in his application prevent a recovery on the policy under *W. Va. Code*, 1931, 33-6-7, as amended. Where pertinent that statute provides:

" ... Misrepresentations, omissions, concealments of facts, and incorrect statements shall not prevent a recovery under the policy unless:

(a) Fraudulent; or

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise."

In support of its position that George Hylton had obtained the subject insurance policy through a fraudulent misrepresentation of material facts, Provident introduced many exhibits. One such exhibit, his admission papers to Green Cross Hospital, Cuyahoga Falls, Ohio, dated September 26, 1963, bears a notation in handwriting, "Coronary 53." It is apparent that the defendant relies on this notation to show that Hylton had a coronary attack of some nature in 1963 and that he concealed that fact by not noting it in his application for insurance.

This 1963 admission to Green Cross Hospital was for the treatment of an ailment diagnosed as duodenitis, an intestinal inflamation. He was at that time under the care of Doctors Anton and Francis Kilonsky. Inasmuch as many of the exhibits upon which the defendant relies are in some manner connected with these doctors, it may be appropriate to here discuss their role. As noted earlier in this opinion George Hylton was the patient of both of these doctors when they were practicing medicine together.

Although Dr. A. Kilonsky's name appears on some of the exhibits which appear to show a history of heart disease, he testified in his deposition that while he remembered Hylton as a patient, he had no independent recollection of him having had heart disease. The record includes a letter from and in the handwriting of Dr. Anton Kilonsky, dated December 12, 1973, wherein he wrote:

To Whom It May Concern

At present I do not have any medical records of Mr. George Hylton. They are in possession of Dr. Francis Kilonsky at Kilonsky Clinic. I cannot comment on any past treatment at this time.

Anton Kilonsky

Significantly, the following letter from Dr. F. Kilonsky, dated March 9, 1973 and addressed to Mrs. Grace Hylton, appears in the record:

I have checked your records for the last ten years very thoroughly and can find no history or treatment for your husband of Cardio Vascular Disease.

If I can be of further assistance, please feel free to call me.

Sincerely,
F. Kilonsky, D.O.

Although Dr. Francis Kilonsky was not called upon to testify in the trial of this action, the above letter dated March 9, 1973 is significant. As the treating physician, he states forcefully from medical records that Mr. Hylton had suffered no heart disease during the prior ten years. Dr. A. Kilonsky, whose deposition appears in the record, was inconclusive, at best, in regard to Mr. Hylton's health. He had no medical records and stated that he could not comment on any past treatment of Mr. Hylton.

A "Physician's Statement" was introduced as an exhibit by the defendant. This statement bore the notation, "Diagnosis 8-13-69—acute—early congestive Heart Failure" and was initialed "A.K.". Dr. A. Kilonsky acknowledged that he had initialed it, but testified that he did not know who wrote the statement nor for whom or for what purpose it was completed; that it was not in his handwriting; that he did not recall when it was written; and that he does not recall having read the statement prior to initialing it, although he said he ordinarily

would not have initialed it had he not read it. In the above described circumstances, the admissibility of the statement is questionable. At any rate, it is inconclusive and the trial court could properly discount its probative value.

Exhibits introduced by the defendant reveal that on two other occasions George Hylton was admitted to Green Cross Hospital. The diagnosis of his ailments on these occasions was indicated on these exhibits. On May 16, 1966 he was treated for a spastic colon and duodenitis. The diagnosis of his illness for his September 16, 1966 admission was gastric ulcer and duodenitis, although the medical record on this latter admission revealed a notation in handwriting, among many other confusing, barely legible scribblings, "Had Heart Attack 1953." This record is signed by Drs. A. & F. Kilonsky. In view of the confused state of their evidence and the notations on the records, once again we hold that such evidence is inconclusive in relation to proof that Mr. Hylton misrepresented facts on his insurance application in 1970. The trial court was the trier and determiner of those facts and in the described circumstances we cannot say that it was wrong.

An exhibit, "Roanoke Memorial Hospitals Consultation Report", was introduced by the defendant. This purports to be a record pertaining to the hospitalization of George Hylton, beginning on January 7, 1972. As a part of his past medical history this statement is found: "In 1954, the patient was hospitalized for 31 days in Akron, Ohio with a *possible* coronary." (Emphasis supplied). This reference to a possible coronary is of no conclusive probative value. It neither shows that the deceased had suffered a coronary or that he was aware thereof had such condition occurred. Without any explanation, it was indicated under the heading, "Impressions:" "6. Arteriosclerotic Heart Disease With Old Myocardial Infarction By History." Significantly, this report further noted that upon physical examination the heart was normal. Once again, this is an inconclusive record upon which no

witness testified. The trial court was justified in weighing and determining the probative value thereof.

On February 3, 1972, approximately two months prior to his death, George Hylton applied to the Social Security Administration for disability benefits. Pursuant thereto he completed a form designated "Disability Determination and Transmittal," which was introduced into evidence by the defendant. On this form Mr. Hylton noted many illnesses for which he had been treated. In fact, it was obvious from the multitude of maladies noted therein, including a heart attack in 1953, that he was making the strongest case possible to insure his receipt of disability benefits.

This exhibit constituted evidence to be considered by the trial court but it by no means was conclusive proof that Hylton had, in fact, suffered a heart attack; nor was it decisive of the sole issue—whether the deceased had made fraudulent representations in his application for the subject insurance policy.

The only evidence in support of the defendant's contention that George Hylton had suffered a heart attack and had experienced other ailments which would preclude him from purchasing life insurance was contained in the many exhibits of record in this case. No witness, medical or otherwise, was called to bolster that contention. Although Doctors Anton and Francis Kilonsky, Hylton's treating physicians over a period of many years, were available, neither was called as a witness at the trial. Dr. Anton Kilonsky's deposition, alluded to above, was taken but was of no probative value in determining the principal issue presented in this case. Other doctors' names appeared in the record but none was called to testify.

On the other hand, there is substantial evidence, lay and medical, which supports the plaintiffs' position that George Hylton had never suffered a heart attack or that he had never experienced any cardiovascular disease.

Grace Hylton, George's widow, was married to George on June 8, 1930 and lived with him, uninterrupted, until his death on April 12, 1972. She testified at the trial and by deposition. Mrs. Hylton readily acknowledged that her husband had suffered from many illnesses during the last ten years of his life. However, she was steadfast in her assertion that he had never had any sort of heart trouble. In her deposition she affirmatively stated that her husband had never complained of chest pains, numbness in his arm or of any other condition that would be symptomatic of heart trouble. She stated that no doctor had ever reported that he had a heart condition, although his heart was examined in numerous hospital visits.

Mrs. Hylton testified that in 1970 and 1971 her husband had undertaken extensive and strenuous physical work on his property. She then said "If he had had heart trouble, he would have died right there." She related that George had never told her that any doctor advised him that he had heart trouble. She attempted to learn from Doctors Anton and Francis Kilonsky whether George had ever suffered from any heart condition. As herein noted, Dr. Francis Kilonsky affirmatively stated that his records revealed no history of or treatment for cardiovascular disease over the past ten years.

Capsulizing Mrs. Hylton's testimony, she firmly asserted that during the forty two years that she had lived with her husband he had never, to her knowledge, experienced a heart attack; that no doctor had ever reported the existence of cardiovascular disease of any nature; and that if such condition had ever existed, she certainly would have been aware of it.

Jack Hylton, a forty-one year old son of the deceased, testified that he had lived with his parents from 1953 through 1969 and that, to his knowledge, his father had never suffered from a heart attack. John Nay testified that he and his wife were "great friends" of the Hyltons from 1945 until Mr. Hylton's death; that he saw them two or three times a week; and that he did not know of

any heart attack suffered by Mr. Hylton during those years.

Dr. Hawey Wells, a pathologist, was called as a witness on behalf of the plaintiffs and testified, after having examined an autopsy report on George Hylton. The autopsy was performed in Dr. Wells' laboratory, under his direction, by Dr. Curran, who was, at the time of the trial, in Ireland. Dr. Wells testified that Mr. Hylton had died as a result of cardiac tamponade, which, translated to laymen's language, is a heart attack.

Upon being asked if he could conclude from the report whether or not he had had any previous heart attacks, he replied: "The autopsy report indicates that there were no scars in the myocardium to indicate previous heart attack." Dr. Wells again firmly stated that "There was no evidence that he had a previous heart attack." This question and answer then appear in the record: "Q. If he had had previous heart attacks, would there have been evidence of it? A. Yes, sir. There would have been scars or some resultant occlusion of an artery that would let us know that he had had a previous attack." He further stated on cross examination: "There is no evidence that the patient had previous myocardial, or heart, damage." Dr. Wells did acknowledge that one could suffer some types of heart disease without evidence thereof appearing on an autopsy report. The tone of his testimony, however, was that this would be unusual.

Upon the conflicting evidence reflected herein and in the entire record of this case, the trial court found that the defendant failed to prove that George A. Hylton misrepresented material facts for the issuance of the subject insurance policy and that the policy should be honored by the defendant insurance company. In view of the posture of the evidence, we cannot say that the trial court is clearly wrong or that its findings are against the preponderance of the evidence. This Court has long held that in such circumstances the judgment of the trial court will be affirmed. *Ball v. Ball*, 154 W. Va. 739,

179 S.E.2d 221 (1971); *Work v. Rogerson*, 152 W. Va. 169, 160 S.E.2d 159 (1968); *Boggs v. Settle, Jr.,* 150 W. Va. 330, 145 S.E.2d 446 (1965); *Lieberman v. Lieberman*, 142 W. Va. 716, 98 S.E.2d 275 (1957).

We are fully aware of *Faulkiner v. Equitable Life Insurance Company*, 144 W. Va. 193, 107 S.E.2d 360 (1959), upon which the defendant relies and we do not, by this decision, depart from the principles enunciated therein. In *Faulkiner* it was concluded that the statements made by the insured in his application for insurance were false and, being material, the policy had to be forfeited. We can only assume that the evidence in that case warranted that decision. Such was not so in the instant case. The posture of the evidence was such that the trial court found that the defendant did not establish falsity in the answers of the insured.

For the reasons stated herein the judgment of the Circuit Court of Mercer County is affirmed.

*Affirmed.*